**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2017-CA-00257-COA**

JEWEL LEAN KOHNKE                                             APPELLANT

v.

BERTHA JEAN TATE                                               APPELLEE

DATE OF JUDGMENT:            01/18/2017
TRIAL JUDGE:                 HON. DEBORAH J. GAMBRELL
COURT FROM WHICH APPEALED:   MARION COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     LARRY STAMPS
                             ANITA M. STAMPS
ATTORNEY FOR APPELLEE:       R. ANDREW FOXWORTH
NATURE OF THE CASE:          CIVIL - REAL PROPERTY
DISPOSITION:                 AFFIRMED - 10/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     Bertha Tate filed a complaint for partition of property in the Marion County Chancery Court against Jewel Kohnke and other defendants who are cotenants of the property but not appellants in this case. The property at issue, approximately thirty-nine acres, was devised to several family members in the will of Annie Boone, who passed away in 2010. The chancery court approved a survey, ordered the partition of three separate parcels, and adjudicated the owners of the parcels. Kohnke appealed, claiming the partition of the property was unfair because it was not in equal value to the rights of the property owners. Finding no error, however, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     On March 22, 2016, Tate filed her complaint seeking a partition of her portion of real property[1] that had been devised to her and other relatives under the last will and testament of Annie Boone, who passed away in July 2010.[2]

¶3.     Annie had seven children, three of whom predeceased her but left children of their own.  In her will, Annie devised the subject property between her children or their descendants, and her brother, Frank Holt, with the following ownership interests:

Bertha Jean Tate..............................0.125 (or 1/8)

Howard Boone...............................0.125 (or 1/8)

Christeen Boone Owens.................0.125 (or 1/8)

Jewel Lean Kohnke........................0.125 (or 1/8)

Lonnie Mae McLeod......................0.125 (or 1/8)

Annie Nell Boone[3]..........................0.125 (or 1/8)

Frank W. Holt................................0.125 (or 1/8)

Jackie Boone Walton......................0.0625 (or 1/16)

---

[1] The subject property is legally described as: "NE1/4 of the SE1/4 of Section 1, Township 2 North, Range 18 West, Marion County, Mississippi" and is a total of 40.84 acres.

[2] Neither the will nor the final judgment probating the will is a part of the record on appeal, but the complaint included the interests of the beneficiaries, which are not in dispute. Additionally, a home and surrounding one acre on the property was separately devised to Kohnke and Christeen Owens and is not at issue in this action.  This one acre was excluded from the 40.84 section.

[3] Annie Nell Boone is Annie's granddaughter.

2

Ricky Boone[4]................................0.0625 (or 1/16)

Lonnie McLeod, one of Annie's daughters, died intestate after her mother; therefore, her 1/8 ownership interest was divided among her five children, the McLeod Family, giving each of those five individuals a 0.025 (1/40) ownership interest in the property. Additionally, Frank Holt, Annie's brother, died intestate after Annie's death. He was not married at the time of his death and had no children or surviving parents; however, he did have seven siblings, all of whom predeceased him. Five of the seven siblings were survived by children, which included Annie's children. Accordingly, Holt's 0.125 (1/8) ownership interest in the property was divided into five equal parts, descending through intestate succession to the descendants of Holt's deceased siblings.[5] Therefore, Annie's children inherited an additional 0.025 (1/40) ownership interest in the property from Holt's 1/8 share, to be divided equally among them.

¶4. Christeen Boone Owens and the McLeod Family later joined Tate to have their interest in the subject property partitioned from the larger parcel. The other cotenants, including Kohnke, desired to continue as common owners of the remaining property. After a hearing on August 29, 2016, the chancery court entered an agreed order on September 19, 2016, confirming title and partitioning the property. The order delineated the ownership interests of the cotenants and ordered the property be partitioned in kind to give Tate, the

---

[4] Jackie Walton and Ricky Boone are Annie's grandchildren.

[5] *See* Miss. Code Ann. § 91-1-3 (Rev. 2013).

McLeod Family, and Christeen Owens separate parcels of land equal in value to their ownership interests. The order also added Holt's 1/40 interest to Annie's children or descendants, stating the parties' legal interest in the property was as follows:

Bertha Jean Tate............................0.1285714 (or 180/1400)[6]

Howard Boone..............................0.1285714 (or 180/1400)

Jewel Lean Kohnke........................0.1285714 (or 180/1400)

Charley McLeod............................0.0257143 (or 36/1400)

Frank McLeod...............................0.0257143 (or 36/1400)

Jamie McLeod...............................0.0257143 (or 36/1400)

Joey McLeod.................................0.0257143 (or 36/1400)

Johnny McLeod.............................0.0257143 (or 36/1400)

Christeen Owens............................0.1285714 (or 180/1400)

Ricky Boone..................................0.0642857 (or 90/1400)

Jackie Walton................................0.0642857 (or 90/1400)

Annie Nell Boon............................0.1285714 (or 180/1400)

Frank Holt's Heirs at Law/
Devisees Excluding
Annie Boone's Descendants...........0.10 (or 140/1400)

A final hearing was held on January 18, 2017, where the chancellor entered a final

_____

[6] This amount is the share received through Annie's will, plus Uncle Holt's share, or .125 plus .0035714 equaling 0.1285714.

judgment, approving a survey and partitioning the three parcels. The judgment stated "the requesting parties have agreed among themselves as to the division of the partited parcels." Each parcel contained 5.12 acres, with Tate owning Parcel #1, the McLeod family owning Parcel #2, and Christeen Owens owning Parcel #3. The remaining property consisted of 25.48 acres. The judgment also allowed Howard Boone to continue to graze and water his livestock from the small "catfish" pond on Owens's parcel, as long as he lived or had the need. Relatedly, she was prohibited from building a fence on her parcel, to which she agreed.

## STANDARD OF REVIEW

¶5.     For partition cases, "[a]n appellate court will only overturn a chancellor's decision . . . if it is determined that the chancellor committed manifest error." *Cathey v. McPhail & Assocs. Inc.*, 989 So. 2d 494, 495 (¶3) (Miss. Ct. App. 2008). "[U]nless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard," the reviewing court will not overturn the chancellor's findings when supported by substantial evidence. *Id.*; *accord Samples v. Davis*, 904 So. 2d 1061, 1064 (¶9) (Miss. 2004).

## ARGUMENT

¶6.     Kohnke raises three issues: (1) the chancellor improperly and unfairly partitioned the property based upon acreage rather than value, (2) there was a mathematical error in the calculations used to determine the interests of the cotenants, and (3) the chancellor

improperly accepted the deraignment of title without a hearing.[7]

### I. Partition of Property

¶7.    Kohnke argues that the division of the three separate parcels of 5.12 acres was improper and inequitable because the value of the parcels was unequal. She requests the case be remanded to partition the property based upon value rather than acreage. Also, she suggests on remand the chancellor make a more complete record of how the property was distributed.

¶8.    "Partition is a statutory right in Mississippi" governed by Mississippi Code Annotated sections 11-21-1 through -45 (Rev. 2004). *Mosby v. Mosby*, 962 So. 2d 119, 121 (¶8) (Miss. Ct. App. 2007). Cotenants have an absolute right to partition property (with one statutory exception not applicable here). *Id.* "A partition in kind, rather than a partition by sale, is the preferred method of dividing property in Mississippi." *Cathey*, 989 So. 2d at 495 (¶4). "Any party in interest . . . may institute proceedings for the partition of lands . . ." in the chancery court. Miss. Code Ann. § 11-21-5 (Rev. 2004).

¶9.    Kohnke claims the case must be remanded because the chancellor did not follow the statutory requirements imposed on special commissioners who may, but are not required to, be appointed by the chancellor in partition actions.[8] Kohnke argues that the chancellor did

---

[7] Kohnke has different counsel on appeal, and many of her arguments criticize her counsel's actions during the chancery court proceedings.

[8] Kohnke admits that the chancery court was within its authority to order a partition without appointing a special commissioner. *See* Miss. Code Ann. § 11-21-13 (Rev. 2004).

not divide the property into shares "having regard to the situation, quantity, quality and advantages of each part or share, so that they may be equal in value as nearly as may be, or according to the respective rights of the parties." *See* Miss. Code Ann. § 11-21-19 (Rev. 2004). Kohnke claims this statutory language for the special commissioner applies to the chancellor. She further contends that there was no proof that an expert or the surveyor considered the statutory language either. Finally, she maintains that the division of the property was unfair because there was no evidence presented as to the value of the land.

¶10. Kohnke's reliance on section 11-21-19 is misplaced because it relates to the situation where a special commissioner is appointed, unlike here, where neither party requested one. Regardless of the inapplicability of the statute, however, Kohnke is basically arguing the property was unfairly divided with unequal value according to the interest rights of the cotenants. After examining the record, we cannot say that the chancellor's ruling on the survey and division of property was manifest error. Moreover, neither Kohnke nor her attorney during the chancery court proceedings made any objections as to the method of partition used (in kind), requested that a special commissioner be appointed, or requested that an appraisal of the property's value be made. Also, Kohnke did not request partition based on value. It is well established that a chancellor cannot abuse her discretion in failing to grant a request that was never made. *Pride v. Pride*, 60 So. 3d 208, 212 (¶15) (Miss. Ct. App. 2011).

¶11. Kohnke's discontent appears to stem from the fact that there are three ponds on the

7

property—two larger ponds on the large undivided tract, and one smaller pond on Christeen Owens's parcel. Kohnke states the chancery court unfairly "enriched" Tate by granting her "an entire pond for her sole use and benefit to the exclusion of the other beneficiaries," and allowing Howard Boone to water his livestock from Owens's pond. It is unclear from the record which pond Kohnke is speaking of, because on the survey map, Tate does not have a pond on her parcel and was not granted use of a pond, as Howard was. At the hearing, the chancellor explained to Kohnke that the property distribution was fair because the majority of cotenants, including Kohnke, had unfettered use and access to the two larger ponds on the 25.28 acres of property. We cannot find error in this regard.

¶12. Accommodations appear to have been made for the fair distribution of property between the three partited owners and the remaining cotenants. As Tate notes, the survey shows the three parcels are in the back of the property and do not front a public road; they were located to ensure the remaining cotenants' portion of the land remained contiguous and intact. The house and surrounding one acre is on the undivided land. Boone was allowed to run his livestock operation throughout the land with access to all three ponds. Easements were granted for the three parcels to allow ingress and egress. Accordingly, there is substantial evidence in the record to justify the chancellor's division of the property.[9] We cannot say it was "unfair" to the remaining cotenants. This issue is without merit.

---

[9] Kohnke complains that the record is sparse because the first two of the three hearings were not transcribed, but we find the record sufficient.

## II.      Interests of Cotenants

¶13.    Kohnke argues that the calculations used to determine the cotenants' ownership interests in the property were incorrect, and therefore the owners of the three partitioned parcels received "too much acreage" for their ownership interests. She also claims there is no proof to support the "per stirpes distribution" tendered to the chancery court by the parties' attorneys and it, too, is erroneous. Therefore, Kohnke suggests that even though these issues were not raised below, she is entitled to plain error review.

¶14.    The September 19, 2016 agreed order delineated the ownership interests that each of the heirs to Annie's will were to receive. We cannot find error in their determination. Annie's will had nine beneficiaries; seven beneficiaries received 1/8 interest and two beneficiaries received 1/16 interest each. However, the death of Annie's brother Holt, who held a 1/8 interest and died without a will, spouse, children, living siblings, or parents, increased the ownership interests of all of Annie's other beneficiaries. Holt's 1/8 interest was divided into five equal parts, or 1/40th of an interest, and descended to his five siblings who had children, which included Annie. Therefore, Annie's descendants (her living children and the children of her deceased children) received an additional 1/40th interest in the land, to be divided among them according to their proportionate share. Attorneys for both parties before the chancery court clearly laid out the interests in both fractions and decimal figures. After thoroughly reviewing them, we find no error in their calculation.

¶15.    Kohnke now criticizes the chancery court for allowing the attorneys to calculate the

cotenants' inherited ownership interests instead of appointing a special commissioner. She also complains the calculations are incorrect, without elaboration, and there is no evidence to support them. As stated earlier, Annie's will is not a part of the record, but the complaint explained the interests devised in the will, and at that time, and during the entire proceedings in the chancery court, the calculations were not in dispute.

¶16. At the hearing, Kohnke appeared to be concerned that some of Holt's interest was not being distributed to all of Annie's descendants. However, all of Annie's descendants, including both Kohnke and Tate, inherited some of Holt's interest. The calculations show every descendant and devisee received their fair portion of the property according to Annie's will and the laws of intestate succession.

¶17. Additionally, Kohnke argues the three separate parcels of 5.12 acres exceed the vested interest of the owners receiving them. At the final hearing, Kohnke argued that the division was unfair because there was insufficient total acreage to give the remaining cotenants each 5.12 acres—the amount the partitioned owners received. Kohnke claims that the property should be divided into eight parcels or 4.88 acres for the 1/8 interest owners and 2.4 acres for the two 1/16 interest owners. Under Kohnke's calculations, the partited owners are receiving 0.24 acres more than their interest allows. Kohnke suggests 4.88 acres as the starting point for determining the "correct acreage" to which each beneficiary, or their heirs, is entitled.

¶18. Tate agrees that 4.88 acres is the "starting point" to determine the theoretical acreage

10

for each cotenant. Tate correctly notes, though, that the subject property is not exactly forty acres, but 40.84 acres according to the survey. Because the house and surrounding one-acre of land were devised to Kohnke and Owens, the remaining total acreage is 39.84 acres. Using the percentages agreed upon in the chancery court for the partition parties, each partitioned parcel would equal 5.12 acres (39.84 acres x 180/1400 = 5.12 acres). We cannot find error in this determination. Although it is true that if all of the landowners desired to partition their property in kind and according to their shares there would be a shortage of acreage, that was not the situation before the chancellor when she divided the property. The chancellor had to take other factors into consideration such as location of the parcels, access, easements, and the ponds. The property of the remaining cotenants fronts a public road while the three partitioned parcels do not. We cannot say the chancellor abused her discretion in partitioning the property into three 5.12 acre parcels and a remaining 25.48 acre parcel. This issue is without merit.

### III.    Deraignment of Title

¶19.    Kohnke argues the chancery court failed to conduct a hearing to determine the validity of the property's deraignment found in Tate's complaint. Kohnke complains that there is no evidence the deraignment was performed by a competent abstractor, or that "a title search, abstract, or opinion was entered into evidence." She claims the deraignment and supporting documents' omission from the record is "plain error" and warrants reversal.

¶20.    In order to confirm or quiet title to real estate, the complainant must set forth a

11

deraignment of title. In this case, the deraignment is sufficient if it shows "title out of the sovereign and a deraignment of title for not less than sixty (60) years prior to the filing of the [complaint]." Miss. Code Ann. § 11-17-35 (Rev. 2004).

¶21. Tate's complaint contained a deraignment of title in paragraph 5. It began with a reference to the first conveyance from the sovereign, the United States, with references to the patent, and ended with the conveyance to Annie H. Boone. Accordingly, the statutory requirement of proof of title was fulfilled. Moreover, Kohnke admitted the accuracy of the deraignment in her answer. This issue is without merit.

## CONCLUSION

¶22. For the foregoing reasons, the judgment of the Marion County Chancery Court is affirmed.

¶23. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. FAIR, J., NOT PARTICIPATING.**